RICHARD B. WHITING, as Surviving Executor of the Will of WILLIAM RICHARD DENHAM, Deceased, Plaintiff, *v.* HUDSON TRUST COMPANY, EDITH C. ECKERSON, as Executrix of the Last Will and Testament of JOHN C. R. ECKERSON, Deceased, and HOWARD C. TAYLOR, as Agent and Representative of the New York Supreme Court to Execute the Trusts Created by the Last Will and Testament of JOSEPH H. SNYDER, Deceased, Defendants.

(Supreme Court, New York Special Term, May, 1921.)

Banks and banking — when trust company liable for the misappropriation of funds by an executor, one of its depositors — executors and administrators.

Where a trust company, without investigation, permits checks payable to one of the two executors of an estate to be deposited to what was virtually his personal special account,

each and every item of which was the property of the estate, the trust company is guilty of such negligence as amounts to practically a participation in the diversion or misappropriation of the funds of said estate, and in an action by the surviving executor, though he was negligent in confining the entire charge of the estate to his coexecutor, the trust company is liable not only for the balance of the account with interest but to account for the entire fund deposited and to have judgment rendered against it for any moneys disbursed and for which it might be liable by reason of its having participated in their diversion.

Where a part of the fund so deposited with the trust company was transferred by plaintiff's co-executor to the credit of another estate of which he was trustee by a check drawn by him and deposited in the account of said estate with the same trust company, an amount paid therefrom by him for lawyers' and brokers' fees on the sale of a bond and mortgage belonging to said trust estate, the trust estate is not chargeable therewith in the absence of proof that the estate of the co-executor was released, and the trust company remains liable to plaintiff therefor, with interest. But for the amount of two checks drawn by the co-executor out of the special account and payable to the trust estate that estate is liable.

ACTION to recover funds misappropriated by an executor.

Gilbert D. Lamb, for plaintiff.

Holm, Whitlock & Scarff, for Hudson Trust Company.

Robert J. Mahon, for Edith C. Eckerson, executrix.

Mackintosh Kellogg, for Howard C. Taylor as agent, etc.

COHALAN, J. This action is brought to recover a fund of $48,959.49 and interest, deposited in the Hudson Trust Company in the years 1915 and 1916 by one Eckerson, then a coexecutor with the present plaintiff under the will of William R. Denham, deceased. Of

this fund there is now remaining on deposit approximately $11,000. Of the balance $29,195 was transferred by Eckerson to the estate of one Snyder by check drawn to the order of said estate and deposited in that estate's account in the same trust company. There was also paid out of this fund by Eckerson $1,385, fees of lawyers and brokers in the sale of a bond and mortgage belonging to the Snyder estate. The balance of this fund, approximately $7,400, it is claimed, was paid out for purposes other than for the benefit of the Denham estate. The plaintiff seeks to recover from the Hudson Trust Company the balance on deposit with it, together with trust company interest from October 21, 1916; to obtain a judgment against the Snyder estate for the amount of the trust fund received by it, with legal interest from June 1, 1916, and for the additional sum of $1,385 expended for the use of that estate, with interest thereon; to obtain an account from the trust company of the entire fund deposited with it and judgment against the trust company for any moneys disbursed and for which it may be liable by reason of its having participated in such diversion with the depositor, with notice of the misappropriation. There is also the usual prayer for general relief. Eckerson for many years prior to the death of Denham and up to the time of his own death had been a trustee of the Snyder estate, having been in its early days its executor, and had been acting as attorney-in-fact for Denham from April, 1915, to Denham's death in September of that year, and after his death and the probate of his will became one of the coexecutors with the plaintiff. The power of attorney that Eckerson had from Denham was a broad one and authorized him to draw checks on the Denham bank accounts, to open new bank accounts for Denham, to have access to his safe deposit box containing his

securities and to do many other things unnecessary to mention here. A few days prior to Denham's death Eckerson drew a check for $7,000, payable to himself as trustee, and signed it "William R. Denham, by John C. R. Eckerson, attorney-in-fact." This check was made out on one of Denham's printed checks and drawn upon the United States Mortgage and Trust Company, and on its face showed that Eckerson was acting in a representative capacity both as maker of the check and as payee. The signature on the check indicated that he was acting under the power of attorney and his authority was manifest from the instrument creating it. It was shown at the trial that Eckerson was authorized to draw this money for the use of the Denham estate in the event of a delay in the probate of the will. This agency and use of the money terminated with Denham's death. Prior to the deposit of this check, but on the same day, Eckerson telephoned the trust company — where he already had the following accounts: *First.* " Estate of Joseph H. Snyder, John C. R. Eckerson "; *second,* a personal account; *third,* an account, " John C. R. Eckerson, agent "— and talked to Purdy, expressing a desire to open an account to be kept separate from the other accounts, and Purdy, of the trust company, claims he mentioned the word " special." Purdy testified that the check when presented for deposit indicated to him that it was a trust and that for that reason he inquired of Eckerson whose money it represented and that Eckerson said it was his own. Purdy, it seems, made no further investigation and allowed Eckerson to open a new account, " John C. R. Eckerson, special," with this check. Purdy could see that the check was drawn by an attorney-in-fact, payable to himself as a trustee, and payable out of moneys of the creator of the power, and he should

have made further investigations before allowing the check to be deposited in what was virtually a personal account. Had he communicated with the United States Mortgage and Trust Company the present action undoubtedly would not have arisen, as he would have been made aware of the terms of the power of attorney and in all probability the reasons for the particular trust, and would thus have seen the fallacy of Eckerson's statement, and the check, if deposited, would have been deposited properly in a trust account. Purdy, allowing this check to be deposited in this special account without any other investigation than Eckerson's word, was certainly negligent, and the negligence was not confined to this incident, as will be seen later. The subsequent withdrawals from this account show the intent of Eckerson in depositing the money as he did, and these various checks, so drawn, should have put the trust company on its guard. Some years prior to the death of Denham a firm of brokers had purchased for him, in addition to the bonds in Denham's deposit box in 1916, certain bonds, and these identical bonds were in the month of April, 1916, brought to this same firm of brokers by Eckerson and sold by that firm for $18,817.26. Three checks were given to Eckerson for that amount and deposited by him in this special account. There is no doubt that these bonds so sold were the bonds of the Denham estate, and it is clearly shown by the testimony of McDonald and Hamon that they must have been removed from the safe deposit box by Eckerson between the date of the execution of the power of attorney and Denham's death and kept somewhere by Eckerson up to the time they were sold by the brokers. This is further substantiated by a letter of Denham to Eckerson directing the selection of certain bonds for use in accordance with some unknown instructions.

In May, 1916, other bonds taken from the safe deposit box of Denham were sold by Eckerson through the same brokers for $22,468.54. This sum also was paid to Eckerson by checks made payable to him as executor, and these checks were likewise deposited in this special account. Here again the trust company permitted checks payable to an executor to be deposited to what was virtually a personal account. There is nothing to show any investigation by the trust company with regard to these checks. About a month prior to the deposit of the proceeds of the sale of the bonds the Denham estate had opened an account in the same trust company, but these checks were not deposited in that account. Eckerson had a method in his madness and deposited in this account each check and amount received from the property of the Denham estate, and presumably the small doubtful items were property of the same estate. It is unnecessary to go into each one of the items that make up this special account, as it is my belief they were each and every one of them Denham estate property. Prior to Denham's death an action was commenced by one Wells against Eckerson as trustee of the estate of Snyder, and an interlocutory judgment was entered on or about April 20, 1916. It would appear that in February or March of that year Eckerson had filed an account in that action, and under the judgment he was directed to pay to certain beneficiaries under the will certain sums. The same week the bonds above referred to were sold by Eckerson, and the money for the same deposited in the special account. About three weeks after the entry of judgment, and two weeks after the sale of the bonds and deposit in special account, Eckerson drew checks on this special account and deposited the amounts in the Snyder estate account. I think the entire question, in so far as the liability of the Snyder

estate is concerned, depends entirely upon notice. Eckerson at the time of the transfer was the trustee for both estates and, as the trustee of the Snyder estate, had knowledge of his misappropriation of moneys from the Denham estate. The Snyder estate claims that the judgment entered against Eckerson in the Wells action, Eckerson having made a payment according to that judgment, the plaintiff here cannot hold the Snyder estate. To support this contention they cite English cases and the dicta in the Massachusetts case. I believe, however, that the previous cases are distinguishable from the present and that the present case follows more after *Atlantic Mills* v. *Indian Orchard Mills,* 147 Mass. 268. It is conceded that the Snyder estate at the time the present agent went into possession had approximately $7,000 on deposit in the Hudson Trust Company account. It is also conceded that at the time of the trial there was upwards of $50,000 in the hands of Taylor. After a careful review of the contentions of the parties herein I believe the Snyder estate to be liable for the amount of the two checks drawn out of the special account and payable to the Snyder estate, and in so deciding I am mindful of the fact that the present plaintiff is very negligent of the duties as executor in confining the entire charge of the estate to Eckerson and in not keeping track of it, as appears to be the fact. As to the liability of the Hudson Trust Company, I think enough has been shown to hold them liable for their negligence, which amounted to practically a participation in the diversion or misappropriation of the funds belonging to the Denham estate. It knew or should have known that the check opening the original special account was trust money, and the maker, acting in a trust capacity, making himself the payee of the check as trustee certainly should have put the trust company

on its guard, and it should have made investigations beyond the conference with Eckerson himself. Later, when the checks came from the brokers payable to Eckerson as executor, it again permitted him to deposit them in the special account, which was virtually a personal account, without making any investigation or without questioning the deposit of the checks in that account. Subsequently it knew or should have known that Eckerson was using this special account for his own personal matters, as shown by the garage check and others, and, furthermore, it knew that out of this account were drawn two very large amounts on or about the same time that the proceeds of the bond sale were deposited, which were deposited immediately in the Snyder account in their own company. All these transactions should have put it on guard that Eckerson was commingling trust funds and executor's funds and drawing upon them for his personal matters. I am constrained to hold this company liable to the extent prayed for. The moneys expended by Eckerson for the sale of the mortgage in question are not chargeable to the Snyder estate. There is nothing shown to release Eckerson estate.

Judgment accordingly.